UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:10-cr-13-18 |
| ) | |
| v. ) | *Collier / Lee* |
| ) | |
| ) | |
| ROSEMARY LAWSON ) | |

## REPORT AND RECOMMENDATION

Before the Court is the motion of Defendant Rosemary Lawson ("Defendant") to suppress methamphetamine, paraphernalia, and currency obtained during a search after a traffic stop, as well as later statements she made admitting ownership of the evidence [Doc. 253].[1] Although the Defendant initially made three arguments for suppression, during the hearing she conceded her motion rests on a single issue: whether the traffic stop was justified at its inception.[2] After considering the testimony and the parties' briefs, I find the officer who stopped Defendant had

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 263]. The Government filed a response in opposition [Doc. 305] and an evidentiary hearing was held on June 8, 2010. The matter is now ripe for decision.

[2] At the conclusion of the evidence, Defendant conceded that there was no evidence to support her initial arguments that the traffic stop was unreasonably prolonged and the detention became an arrest that was not supported by probable cause. Given Defendant's concessions, it is not necessary to address in detail the officers' testimony regarding events that transpired after the initial stop or Defendant's now retracted arguments regarding same.

probable cause to believe Defendant had committed a traffic infraction, and I therefore **RECOMMEND** that Defendant's motion to suppress [Doc. 253] be **DENIED**.

## I. EVIDENCE ADDUCED AT THE HEARING

As relevant to this recommendation, the Government offered the testimony of Detective Jimmy Smith ("Smith"), the Bradley County Sheriff's Deputy who stopped Defendant's vehicle. I **FIND** Smith's testimony to be credible. Smith testified as follows: On January 20, 2010, Smith was driving his unmarked car on Old Tasso Road, traveling back to the Bradley County Jail after supervising a controlled purchase of narcotics earlier that day. The suspect targeted in the controlled purchase, whom the officers did not intend to arrest that day, had sold methamphetamine to a confidential informant ("CI"). The suspect was driving a green Chevrolet Blazer at the time of the controlled purchase with distinctive detailing on the side panels.

Less than an hour later, not far from the Bradley County Jail, Smith observed Defendant's vehicle on Old Tasso Road. Old Tasso Road has two lanes of travel (one northbound and one southbound) separated by a double yellow line. At certain points, it also has a third lane designated as a turning lane. When Smith first observed Defendant, she was driving her vehicle astraddle of the painted line separating the turning lane from the rightmost (northbound) lane on Old Tasso Road. As Defendant crested a small hill, the turning lane ended, but Defendant's vehicle remained only halfway in the northbound lane. The other half of her vehicle was then in the leftmost (southbound) lane, straddling the double yellow line. There was no obstruction in the northbound lane, and the

roadway was wide enough that a vehicle could stay within a single lane.[3] While following Defendant, Smith did not have any difficulty keeping his car in the northbound lane. Defendant's vehicle was outside the northbound lane for a total of about 50 to 100 feet before an oncoming vehicle forced her to move over. Smith immediately suspected the driver was intoxicated.

Defendant remained in the northbound lane as Smith followed her. At some point, Smith realized that Defendant's vehicle appeared to be same green Chevrolet Blazer that was involved in the controlled purchase. Approximately one half mile north of the spot where Smith first observed Defendant, Old Tasso Road again broadens into three lanes, with a middle lane for turning. There, Defendant again drove her vehicle half in the turning lane and half in the northbound lane. Smith moved to the far right of the road, where he and his passenger, Detective Carl Maskew, were able to see the Blazer's distinctive detailing and confirm Defendant's vehicle was indeed the same vehicle that had been involved in the controlled purchase earlier that day. Partly because of this realization, and partly because Smith believed he had observed a traffic infraction, Smith decided to stop Defendant's vehicle.

Smith activated his lights and Defendant immediately pulled over. While Smith was issuing a traffic citation under Tenn. Code. Ann. § 55-8-115 for "failure to maintain lane of travel," another officer arrived and ran a drug dog around the vehicle. The dog alerted to the presence of narcotics, and the car was then searched. In Defendant's purse was a black bag containing methamphetamine, some pills, and approximately $1200 in currency, including bills that had been used in the earlier

---

[3] Photographs of the road at the approximate location where Smith first observed Defendant were admitted into evidence as Government's Exhibits 1 and 2, and photographs of the road where Smith stopped Defendant were admitted as Defendant's Exhibit 1. Government's Exhibit 3 is a photograph of Defendant's vehicle showing the distinctive detailing.

controlled purchase. Defendant was then arrested and was read her *Miranda* rights. She then signed a waiver and gave incriminating statements.

## II. ANALYSIS

Defendant seeks to suppress the evidence found in her vehicle and her statements, claiming the traffic stop was unlawful at its inception. In response, the Government contends that Smith had probable cause to believe Defendant had committed a traffic infraction.[4] Smith cited Defendant for a violation of Tenn. Code Ann. § 55-8-115(a), which provides:

> Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway, except as follows: (1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement; (2) When the right half of a roadway is closed to traffic while under construction or repair; (3) Upon a roadway divided into three (3) marked lanes for traffic under the applicable rules thereon; or (4) Upon a roadway designated and signposted for one-way traffic.

Defendant argues that this section applies only to unlaned roads and that travel on laned roads is governed by Tenn. Code Ann. § 55-8-123, which provides:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes

---

[4] An officer may initiate a traffic stop when she has probable cause to believe that a civil infraction has occurred or when she has reasonable suspicion of a completed or ongoing felony or an ongoing misdemeanor. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008); *United States v. Simpson*, 520 F.3d 531, 539-41 (6th Cir. 2008) (*quoting Gaddis v. Redford Twp.*, 364 F.3d 763 (6th Cir. 2004)). Reasonable suspicion of a completed misdemeanor will not support a traffic stop, however. *Simpson*, 520 F.3d at 539 (*distinguishing United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000)). In *Freeman*, the court held that a stop was invalid where police lacked probable cause to stop a vehicle for failure to stay in its lane. 209 F.3d at 466. *Simpson*, however, clarified that the *Freeman* driver's "drifting" out of his lane of travel was a single, isolated incident, and as such was "completed" before the stop was initiated. 520 F.3d at 541. There is no dispute that the traffic infraction observed here, if any, was a Class C misdemeanor under state law. Tenn. Code Ann. § 55-8-103. By arguing that probable cause is the controlling standard here, the Government has waived any argument that there was an *ongoing* misdemeanor traffic violation of which reasonable suspicion would suffice to support the traffic stop.

> for traffic, the following rules, in addition to all others consistent with this section, shall apply: (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety . . . .

Relying on *United States v. Freeman*, Defendant argues that Smith lacked probable cause to believe she failed, "as nearly as practicable," to remain in a single lane. *See* 209 F.3d 464, 466 (6th Cir. 2000) (holding that "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time" is not probable cause to believe that the driver failed "to keep the vehicle within a single lane 'as nearly as practicable.'").

If the "nearly as practicable" standard were applicable here, this might be a closer case. The violation for which Defendant was cited, however, contains no such qualifying language; it states flatly that where the road is sufficiently wide, "a vehicle *shall* be driven upon the right half of the roadway . . . ." Tenn. Code Ann. § 55-8-115(a) (emphasis added). I **CONCLUDE** section 55-8-115(a) applies to both laned and unlaned roads. By its terms, the provision applies to "all roadways." In addition, section 55-8-123 explicitly states it is not the exclusive provision governing travel on laned roads: it requires motorists to comply with "all other[]" rules consistent with it. Section 55-8-115 is consistent with and complementary to section 55-8-123. For example, on roadways with two lanes of travel in each direction, section 55-8-115 requires, without qualification, that motorists stay on the right half of the roadway, while section 55-8-123 requires motorists to stay within a single lane "as nearly as practicable." Swerving between two lanes while remaining on the right half of the roadway would not violate the former section, but it might violate the latter.

Smith testified credibly that he observed Defendant's vehicle straddling the double yellow line dividing the roadway, on a road that was sufficiently wide to accommodate travel in a single

5

lane. This observation provided Smith with probable cause to believe Defendant had violated Tenn. Code Ann. § 55-8-115. *See United States v. Brown*, 2007 WL 1345463, at *7 (E.D. Tenn. 2007) (finding probable cause that a violation of section 55-8-115 had occurred where officer observed defendant driving in center turn lane). The traffic stop was therefore justified at its inception, and accordingly, I **RECOMMEND**[5] that Defendant's motion to suppress [Doc. 253] be **DENIED**.

                                            s/*Susan K. Lee*
                                            SUSAN K. LEE
                                            UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are "frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).